15-0821 Duvall and Walton v. City of Chicago 15-0821 Duvall and Walton v. City of Chicago We're liberal on time, so I don't even know where the button is. So you won't see any red button. Good morning. May it please the Court. We are here today on an appeal from the lower court's dismissal with prejudice of the second amended complaint filed by Mr. Boswell. The second amended complaint contained two counts, one for breach of contract and the other for promissory estoppel. The trial court dismissed the complaint with prejudice on the ground that the trial court found that the complaint sounded more in tort and was therefore caught by the Tort Immunity Act. The city does not appear to defend on that ground, but appears to center its defense of the trial court's ruling on the question of whether or not Mr. Boswell had a lawful, enforceable contract or whether he could establish the elements of a promissory estoppel claim. An ever-so-brief review of the facts is helpful. Thank you. The heart of this appeal lies in an interpretation of three different decisions. The first decision relied on by the city is Fumarallo. The second is a case by the name of Pittman. Both were decided, one by the Illinois Supreme Court and one by the Seventh Circuit. And then a case that we rely on that was decided by this court, which is the last of the three, in Jacobson. In light of Fumarallo, who intershoots in Dapkin, can Boswell overcome this? Yes, I think that that's … Regarding the creation of a contractual right? Yes. I think that it's important to try to synthesize all of those cases and come up with a list of principles that can be derived from those cases. So the first principle is that, in fact, there is a presumption against a contract that stems from or contract rights that grow from an ordinance. There's good reason for that, which is that the legislature should be free to repeal or to amend the ordinance, and therefore the contract is presumed not to exist to flow straight from the ordinance. The second principle, though, I think is far more important, which is before the legislature acts to repeal an ordinance or a statute that defines or informs the employment relationship, does the employee have a right to the benefit of that law? And that's really the distinction. Would Mr. Boswell get a benefit personally for himself in this, or is this just to the public at large? Mr. Boswell asserts a claim for breach of contract. The remedy would be to put him in the position he would have been in but for the breach, which would include damages that are ordinarily rewardable under contract law. That begs the question, doesn't it? He's got to get that in order to do it. Yes, and the contract here was formed as it was in Jacobson by virtue of an ordinance or a piece of legislation that authorized the executives to enter into the contract. Now, what if it allows an ordinance to become something it's not? I mean, it's like calling a pig a horse. What's the differentiation? How does it automatically switch itself to that? In Jacobson, the court answered that question, and the court held that if a contract is breached between the parties, apart and separate from the ordinance, that that contract is enforceable during the time that the ordinance is in existence. So in this case, for example, the ordinance created a compliance department, and that compliance department included hiring a person who would head the compliance department. The Federal Court, as part of a consent decree and an accord between the parties, also recognized and blessed that adoption of that hiring plan. Under that plan, there was no person who would fill that role. That had to take place with the authority provided by the ordinance when the mayor and his team began to conduct a search nationally to find that person. When they located Mr. Boswell, they made an offer to him. The offer wasn't contained in the ordinance. The offer was how much money he would be paid, when his start date would be, when he would come to Chicago, and what his title would be. He had an independent contract, and in this particular case, which I think speaks to the question of whether or not there is this slippery slope of every ordinance becoming an enforceable contract, there was a second step that took place, which is the majority of the city council had to agree and affirm that Mr. Boswell would be selected for this position. So in terms of a slippery slope and whether every ordinance becomes a contract, one could ask the question, which is, if the next person were to come in here and the next person were to say there was a federal consent decree in which a federal court directed that there be a hiring plan with the Department of Compliance and directed that that department be independent, and the city council set forth an ordinance that set the terms, which was four years, no removal without cause, and that the city council, not the mayor, had to agree to remove, by majority vote, Mr. Boswell from that position. And then, in addition, the duties that the person was to perform were those that were autonomous. There is no other employee in the city of Chicago, to our knowledge, who is selected by the mayor, does not serve at the mayor's will, is not an exempt rank employee, but has a set term of employment, and where that person must be approved by the city council, and that person cannot be removed without the authority and approval of the city council. Wasn't there another step in that the federal judge overseeing the hiring plan, before he approved it, and what was happening here was the replacement of the hiring monitor with Mr. Boswell? What was happening was that the city... And that was all before the federal court, who gave a blessing to this trade, so the city supposedly would save money, as part of the reasons, at least, that are presented in the briefs. Yes, and another reason was that this had been a 40-year piece of litigation, almost, in which the city had failed to reform and was finding itself back in front of a federal judge on contempt proceedings. And so the city agreed, as part of an accord with the monitor and with the plaintiffs, to establish this independent department of compliance, and to hire what Judge Anderson required was an outsider, to go find somebody who did not work for the city of Chicago and had no connection or knowledge with the city of Chicago. Mr. Boswell was a University of Pennsylvania law grad and had 20 years of experience in leadership and 15 in corporate governance. He came to the city of Chicago, brought his young family, moved them across the states, and accepted this position with the knowledge and understanding that it would be a four-year term that he could only be removed with clause and that the city council would have to remove him by a majority vote. We would strongly suggest that there is no other parallel and no worry or no concern that under similar facts a contract would be developed. And under Jacobson, what Jacobson focuses on, and I think this is a critical point, is that Mr. Boswell, unlike Unterschutz and Dobkin, is not asking for something more than the ordinance provides. In those cases, in Dobkin, the person was asking for a guarantee of employment that he would work for two years and then not be replaced until his successor was located, which was in the ordinance, but the ordinance failed, unlike this case, to provide that plaintiff with anything other than at-will employment, same with Unterschutz. And so the person was really trying to create a contractual right from policy statements or matters that weren't intended to be binding. In this case, the city entered into a bargain. It entered a bargain with the federal court, where it appeared in federal court and came up with this idea to create this independent department of compliance, and the city entered into a bargain with Mr. Boswell that he would serve a need. He would help the city get out from underneath, finally, this consent decree by creating an independent department of compliance. And I think it's important to understand that there are two ways you can get around this issue of whether or not there's a contract. One is Jacobson, which looks at the contract formation, and Jacobson holds that if there is a contract between the parties, that's a pardon separate from that ordinance, that that contract is enforceable. And that makes good sense. Why would the city be allowed to recruit somebody, bring them here, promise them a four-year term, provide that they could only be removed with a vote by the majority of the city council, and then be allowed, unlike any other employer in the country, to just escape that obligation when, in fact, there was no repeal of that ordinance? And I would suggest that far from undermining the legislature, the holding here creates a mockery of the legislature because the legislature and the city council created the department of compliance. And what Mr. Boswell alleges is that even though the city council provided that he could only be removed with cause by a vote by the city council, that what, in fact, happened was that they found a way to get around it by removing his duties, by reassigning his duties, and by dismantling the department of compliance without going through the step of getting city approval. So therein sits on the books an ordinance that provides for a department of compliance that no longer exists. But the ordinance doesn't seem to be of much help because it does not mention contract, covenants, or vested rights. So it's extremely limited. And then who empowers it? And the ordinance does, in fact, mention a right, which is a right, and this is what is a critical distinction between undershoes and dockets. It sets forth a process and it gives a right of continued employment until such time as there is a vote by the city council and a majority of the city council to remove Mr. Boswell. And if you focus on what the task was at hand, it's very similar to what the city has just recently done, which is in a similar context, which is for police reform, have put together this person who actually does have contractual rights but does not answer to the mayor, does not answer to the city, is allowed to do investigations without being expected to be investigated himself, he's not supposed to be able to have his department be terminated, his people who work for him, without his involvement, and for good reason. And I think that this is an extraordinarily unusual case because it has the interplay of a federal district court monitoring a 40-year piece of litigation, and I would urge you to read the court's decision with respect to Mr. Boswell. You are correct, Justice Simon. It was a critical component of Judge Anderson's approval of that hiring plan was not only that Mr. Boswell was the person who was selected, but that the person who would be monitoring the hiring plan would report directly to Mr. Boswell without anybody being able to interfere, and Judge Anderson cited that Mr. Boswell would serve for a four-year term, and most importantly, that while he was to be selected by the mayor, his selection had to be approved by the city council, and his removal would be required to be approved by a majority of the city council. So this, then, is that unusual case where both there is a contract for a set term, not an at-will employment relationship that somebody is trying to convert into a contract with a set term. It is that unusual case, unlike Funarol and Pittman, where there is no repeal of the ordinance during his employment, and he is not asking for something more than what the legislator provided to him, and it is that unusual case where even though there is a presumption against an ordinance creating a contract, that in fact when you consider what the Supreme Court has directed that you consider the text of the law, its context and its historical purpose, that it makes sense that this position would have been protected and what happened to Mr. Boswell would not have been allowed to have happened. And as a man who had a University of Pennsylvania law degree and 15 years in corporate governance, he would never have accepted that position. He would not have allowed his name to be abused unless he knew that his removal could not be effectuated without a majority vote of the city council and that the department would be autonomous, independent, free from any influence and free from any interference. We were going to set down factors that would differentiate this situation from those cases where courts have not found statutes or ordinances to provide for a contract. What factors would you say that would be necessary in order to make that determination? I think Jacobson, this court's decision, does a beautiful job of that. The first factor is, is there an independent contract between the parties? Because if there is, then that contract, not the ordinance, is where the plaintiff's rights are derived from. Second, unlike Pittman and Fumarello, is the person asking for more than the bargain? All right, but let's go to the first question. That's the issue here really is. That's the issue here. There are two routes you can get to contract formation. One is to say there was an independent contract. And there's no express here, right? Well, in Jacobson, what they concluded is whether specifically labeled contract, employment rights, contract implied in fact, or a quasi-contract. The relationship between the board and the plaintiffs existed until constitutionally and validly repealed and that relationship sounded in contract. So there isn't the issue that was present in those other cases because the person isn't asking for something more than the ordinance provided. In those cases, there was tenure. Tenure was granted by a legislative enactment which was then repealed. And the principles in Fumarello and Pittman were asking for the court to recognize those tenure rights even after the legislature repealed them. The one case that's similar to this one is this court's case, which comes after Fumarello and after Pittman, in which the court reviewed the precise question that's presented here, which is during the time that the ordinance was in effect, does the employee have the right to the benefit of the bargain and to the right to enforcement of the ordinance? So we're not asking... Under that bargain, the only way they could get rid of them was for cause which would require a majority vote of the city council. Absolutely. Absolutely. And... So that's the key here? That's the key. And in almost all of these cases, the person is an at-will employee. This is a very unusual situation that came about through a federal court action, a contempt proceeding in a federal court action, the creation of an ordinance, the presentation back to a federal court judge who blessed it, and then the separate contracting of a person who fit the needs of that federal court judge who wanted the person to be an outsider, no connection to the city, and for that person to have complete control over the departmental compliance, only to be removed for cause with authority and approval by the majority of the city council. When you think about the whole structure of the city of Chicago, jobs either fall into career service jobs or they fall into this exempt rank. The exempt ranks are part of the mayor's and the department head's right to retain, hire, fire at will. This is this hybrid job where this person really is selected by the mayor but has contractual rights to remain for a four-year period unless and until he is removed for cause by a majority vote by the city council or we would concede that statute is repealed. And if that statute were to be repealed, it might still raise questions in light of the repeal, does the city owe any obligation to a person with whom they contract? We don't need to go there, but that's the promissory estoppel claim, is that if not a contract, what does this man get out of this? He picked himself up, he moved. In law school 35 years ago, we all probably, I did the promissory estoppel brief in moot court, and this seems to be exactly what that circumstance and what that provision of the restatement of torts envisions, is that a person who relies to his detriment on, and here he relied on a federal court proceeding, he relied on words and statements of the mayor and his staff, but he also relied upon a written document, which was an ordinance that confirmed all of those in a guarantee that there would be no interference unless and until the city council voted to remove him. And if this were to ever have worked, and we want to honor the city council and say this was a concept that was designed to rid the workforce of patronage, it needed to be independent, that's the whole essence, and that's where when you look to contract understanding and interpretation, you look at the case law saying it's the context, it's the text, and it's the purpose. The purpose was to create an independent compliance department that could then investigate and implement governance concerning compliance so that this 40-year-old piece of litigation could end. And so unless there's any other questions. In terms of the makeup of what you're telling us, do you have the essential elements of offer acceptance and consideration? Yes. In Jacobson, there's a huge section of the decision that addresses that issue and also comes out saying that with respect to an employment arrangement, that all that's necessary for that contract formation is the offer for services in exchange for the wage. But here we have an offer that's very specific to perform a job that's in a ordinance. Remember, the ordinance was passed in September. Mr. Boswell wasn't hired until November. And promises that are backed up by a federal court judge approving the hiring plan, as well as the most critical aspect, which is that there was a guarantee that Mr. Boswell could not be removed from that job without a vote of the majority of the city council members. But he did suffer retaliation, didn't he? He suffered horribly. He came in and he was an outsider. By the time he left, he was not an outsider. But he was an outsider. And he came in and he thought, gee, I've worked in corporations. I've done corporate governance. I'm going to issue some policies. I'm going to issue some protocols. I'm going to enforce those protocols. And the first thing he did was hit the law department with a problem. And it went down from there. And it wasn't only that he lost that job. It was the way in which the city went about it. He was suspended. He was written up in the newspaper. They accused him of trying to get his children into a special school. He was run out of town. And he didn't work again, I believe, for two years until he got a job as a CEO with a not-for-profit. So the question really is if the city wants to hire competent people and wants to do something like this again, who is going to take that job? And this is because of three factors, the first being that there is this independent contract with this unusual right that the entire city council has to vote on this one employee's removal. That's very unusual. The second factor being that he isn't asking for anything more than is in that ordinance. He's not asking for, after the repeal of the ordinance, to be allowed to continue working there. And then the third and also a critical factor is just the purpose of this ordinance. And so it makes good common sense. And this isn't the case where there would be a concern that ruling in favor of Mr. Boswell would undercut the legislative purpose. Quite to the contrary, it would support the legislative purpose. The legislature created the Department of Compliance, and his allegation is that the city interfered with it. What should have happened was it should have been that he was going to be removed Instead of doing it in a creative way, which is destroying him and pulling all his jobs away from him, they should have written him up for whatever they thought they wanted to remove him for and had him go in front of the city council and plead his case. That is the best way to respect the city council's decision in passing that ordinance, not blessing what happened in this case, which is the disregard of a federal court order and the disregard of the city ordinance. What happens if you don't get 100 percent of the city council's vote? Fractions? A majority. It was specifically set forth in the ordinance that it was a majority. Thank you very much. If there are no more questions, I will reserve the reindeer of my time, which I probably used. Thank you. You've got a few minutes. Thank you. May it please the court. Justin Hooper for the city of Chicago. The circuit court properly dismissed Mr. Boswell's breach of contract and promissory stop all claims. To begin, Mr. Boswell cannot state a claim for breach of contract based on the city's formal compliance ordinance. Can you speak a little more slowly?  Yes, Your Honor, of course. To start, I'd just like to address a few points that was raised by opposing counsel in the opening argument. First, Mr. Boswell did not claim, to be clear, he did not claim a separate contract with the city aside from the compliance ordinance. His complaint is very clear that he was basing his contract claim on attempting to enforce the ordinance as a contract. His breach is clear as well. They're raising this now as a new claim, and that's waived at this point. Second of all, it should be noted that Mr. Boswell was not removed from his employment in the city. Rather, he quit his position. And below, in the circuit court, he expressly disclaimed, and you can find this at C-181 in the record, any claim that he was entitled to continued employment for a longer period of time at the city. He voluntarily left the city. Third, although counsel just may have said that it's critical to consider the federal court's hiring plan and all of those things that went on in separate relegation in federal court, Mr. Boswell raised no argument at all about the federal court proceedings. He raised those for the first time here on appeal, so he's also waived those despite claiming that they're now part of his claim. How's that waived? I don't understand. Those are facts. We can take cognizance of judicial notice of facts. You don't like facts with regard to this whole case is intimately entwined with the federal judge and the hiring plan. I mean, you can't look at one without the other in it. So it seems to me that it's implied, if not specifically discussed, it's implied in everything that goes on in this case. Well, Your Honor, this court can certainly take judicial notice of facts that occur in other court proceedings, but that's separate from the idea of raising a legal argument that there was a contract formed in those proceedings. That argument was not raised below, and for that reason, there was a legal argument. It all has to do with the facts that developed in, I mean, up with the hiring plan. Well, again, Your Honor, there was no argument made in this circuit court at all regarding anything that occurred in the federal court. For that reason, that's why there is waiver. But regardless, even if the court considers it's a factual situation. But in any event, as to express language to the contrary, laws like the compliance ordinance do not create contracts. And furthermore, the OAS Supreme Court stated that a law setting forth the terms of public employment did not create a contract between the state employers and its employees. We're talking about one individual here, right? We're talking about one individual, that's correct, Your Honor. But the ordinance here, the compliance ordinance, does not mention Mr. Boswell? Why would it have to? He was the individual that was hired to do this particular job. You can have a contract that's somebody, he was hired to be that executive director. I mean, there's no question about that, is there? There's no question about that. But the question is whether Mr. Boswell can privately enforce the provisions of the contract. The provisions that he relies on in the compliance ordinance that he says were his contract are the provisions regarding his independence and his powers as the executive director of compliance and whether any of that is contractually enforceable to the benefit of Mr. Boswell. And it simply is not. I don't understand the situation then. If only the city council could be removed for cause. And the whole idea here was to have somebody independent. That was over and over. The city said that. The mayor said that. Told the federal court that. It's in the ordinance. All about this independence. And you're saying the city can do whatever they want with regard to this employee? What I'm saying is that Mr. Boswell cannot seek personal damages to enforce the terms of that ordinance. But he was hired to be that executive director. That's correct. He could have gone to the city council and complained or asked for a hearing. The mayor complained bitterly about this. I'm sorry? The mayor complained quite a bit about this being enacted, doing this. Of having to put in place the hiring director? Yes. Your Honor, I don't know about that. We have different briefs. I'm sorry? We have different briefs. Okay. Well, Your Honor, if you look at Mr. Boswell's own allegations of his complaint, he alleges that the inspector general recommended his suspension due to problems that the inspector general found with his work and that the mayor accepted the inspector general's recommendation to suspend him. What does that tell you? That there was a – that's by his own allegation that the inspector general was the one who recommended his suspension to the mayor due to problems with his work. It was organic suspension right off the bat. No, Your Honor, respectfully, of all these facts, if none of this has been developed, the city takes a very different view of the facts and would if it went on. Your Honor, here I motion to dismiss, and frankly, as a matter of law, Mr. Boswell simply cannot state a claim that the compliance ordinance is a contract enforceable for his benefit. It was – it defines a job of an individual, one person, and this is a unique position. You would agree? Yes, it's a very unique position. That's true. Okay. And in order – and there was a monitor, a hiring monitor in federal court, right? That's true, Your Honor. And you didn't – the city didn't want to have that hiring monitor continue? That's correct, yes. Okay. So there was a proposal, apparently it was agreed to, which was overseen by Judge Anderson to have this hiring plan, which included an ordinance. All this had to be done before he would approve the hiring plan, right? You had to have the ordinance passed. Is that correct? That's correct. Somebody had to be hired? He knew somebody was hired? I believe so, yes. Yes. So – and there was Mr. Boswell that was hired to do this job that was defined, his duties were defined, everything that had to do with his term, with his duties, and with his dismissal were all defined in this ordinance. I mean, this isn't like those other cases that you're talking about. In those other cases, there's something else going on in a more general – in tone. Here we're talking about a specific person in a specific job who was brought in to do something, to oversee something that he had to have independence. And his complaint now is, you undermined my independence. You did all this to me and you made it so that I had to leave. But if he didn't have a contract, what did he have? He just an at-will employee? Is that what you're saying? No, he may have had – he had an employment contract, but it was not – but the terms of the ordinance are not themselves the contract that can be enforced. What are the terms? Perhaps if he were claiming that he had been removed improperly, maybe there would be a claim there. But again, he just claimed that claim below. So is he bringing any damages or asserting any damages in this case? Your Honor, I'm unclear as to what his damages – he states in one of his briefs that he's asking for damages for salary and I believe for time spent serving the city, something like that. I don't really understand what those claims are. He could bring that just as any creditor could. Why does it get all mixed up in this? He gets mixed up because he brought a claim claiming that he gets to enforce the compliance ordinance and it's termed in the powers of the office as a contract. And respectfully, this is very similar to Dopkin, to the fact that Dopkin was there. There was an employee who was hired for a position that was created by statute as an assistant director of the Department of Public Health. And he claimed that he was supposed to remain in office until he was replaced by the governor and there was a success of employment through a process and that didn't occur. And this court said that those promises about that employee position, the terms of that position, those are not contractual promises that can be enforced. That's a much different situation than what we have here. This, as you agreed, was unique. We have one individual and the reason he was retained has to do with that ordinance. What other contract was there other than that ordinance? Even if you don't recall it, recall the ordinance. Is there another contract or something that was signed? Is there anything else out there? No, Your Honor. Okay, so he said, your argument is if he doesn't have a contract, which is what your argument, right? No, I would argue that he has a standard employment contract to form whenever someone is hired. What do you mean standard employment? Did he sign anything? I'm unaware of anything that he signed. So there is no standard employment contract, right? What do you mean standard employment? The only reason he's here is because of that ordinance, isn't it? That's true of every public employee. My position only exists with that. I know, but this is a specific person. The difference here, isn't it, is that we have one person for a job that's defined, for a term that's defined, for a rule that's defined. When I said that there was a unique position, I meant that the position was unique. There was one executive director of compliance, but there are many positions throughout the city and other governments that are unique. The corporation council of the city is created by statute. There's one corporation council. He serves a period. He serves subject to the ordinance and the powers that he's given, but that does not mean that the ordinance that creates that position creates an enforceable contract. In fact, the only Supreme Court was very clear from the rule in saying that the promissory elements of a statute or a law that makes promises to induce an employee to take a job, and this is the language in the decision, says that induce an employee to accept public employment does not make or transform that law into a contract. It's not enforceable as a private contract. Those terms simply are not contractual unless there is language of contract, because otherwise this legislature would never be able to change the terms of that position without facing a contract claim. And because there's a presumption that the legislature can do that and should be able to in a democratic process, that that's why a law is simply not enforceable. But that's not this case, because this is a different type of position where the whole idea behind this position was independence. And if you don't have that independence, then this position doesn't mean anything, correct? With respect to what the position means is a separate issue. The purpose of the position. We're talking about the purpose. Why was this ordinance passed? Well, we have to look at the language. The Supreme Court is clear, too. Look to the language of the law. Does it make – does it give, say, contract, covenant? Does it say, rest in God's, things that would say that the legislature intended for there to be a contract in the terms of this law, not simply a benefit to the public, but rather a private benefit that was contractual, and there's definitely a benefit there. So the position has to be expressed, is that it? Yes, Your Honor. All right. So if it's not expressed, it's impossible under the law. The presumption is that there must be expressed language of contract, vested rights, promises. That's in Fremantle. That's in Dockick. That's in Interstate. That's in Chicago, Louisiana. The Supreme Court was clear, and this Court has been clear in following that. So it can't be implied, is what you're saying? It cannot be implied. It must be expressed. That's right. And because they've conceded that there isn't any language to that effect, the case is over? That should be limited, Your Honor. That's correct. Now, I'll just quickly be also verbalized on Jacobson. And Jacobson is different because in Jacobson, the report said that the court was very specific, and it said, I'm distinguishing this case from Fremantle because in Fremantle, the plaintiffs claimed that the law itself created the contract. And here the Jacobson claimants claimed that they had a separate contract because they were told you can have a tenured position if you come and serve a three-year probationary period, and they did that. They accepted that promise by serving their period and they formed a separate contract. Here again, Mr. Boswell has been clear that he claims that the ordinance itself is a promise, a contractual promise, and is enforceable by him. And for that reason, Jacobson is distinguishable. Mr. Boswell didn't address his promissory stopper claim, but I would be glad to address it otherwise. If the Court has no questions, I would move. She still agrees, I think. Okay. I just wanted to make sure. So with respect to the promise, the city would ask that this Court affirm the judgment below. I'd like to ask, so it has to be expressed. No, I'm sorry. That was your argument. I'm asking. Yes, I was. Is that, he says it has to be expressed. No, I'll cite your own decision. This Court's decision in Jacobson says, whether specifically labeled contract, employment rights, contract implied in fact, or quasi-contract. The relationship between the board and the plaintiffs existed until constitutionally and validly repealed, and that relationship sounded in contract. So no court has ever held that the employee is not entitled to the benefit that's in the ordinance or the statute during the period of time in which that statute is in effect. The examples that counsel cites with respect to Dopkein and, for example, the appointment of the Corporation Counsel, they're very different. In Dopkein, there was a specific finding that the employee was at will, that nothing in the statute created a mechanism by which he could be removed, and nothing in the statute created anything other than an at-will relationship. He was trying to take a statute that said you work for two years or until your replacement is appointed, which allows for a holdover, and say that guaranteed me some process by which I could be removed. And what the court said, no, it did not, because what was absent in that case is what's present in this one, which is a process by which he could only be removed by majority vote by the city council. Another fact that he quit. He was not doing well. That's an interesting question, and I think that MISAC v. City of Chicago answers that question, which is that when a person has a right to be fired only pursuant to a process and without cause, there are a lot of nifty creative things that the employer can do to effectively terminate the person. In MISAC, it was a sham reorganization, and that's really what happened here. They reorganized, pulled the duties that he had out from underneath him, regave them to a completely different department, terminated a third of his staff, and he was left without the job that he was hired to perform. An analogy that might be apt would be if you hired somebody as a lawyer, and that person was to go to court, was to take depositions, was to try cases, and you could only remove that person from their job as a lawyer with cause, but instead you told that person effectively you will not be trying any cases, you will not be arguing in court, you will not be taking any depositions, you will be in the photocopy room all day long photocopying exhibits. The person, for all practical purposes, is not a lawyer. That person is now a paralegal. And that's what happened to Mr. Boswell. He was the department head of compliance, an autonomous, independent department. That department was eviscerated, but it wasn't done so in the way that it was supposed to happen. It was supposed to happen with the city council's involvement because that's what the legislature wanted, and that's what the legislator drafted in the ordinance. And one final point. There's been repeated mention that we did not allege in our complaint that there was an independent contract, and, in fact, paragraph 8 of the complaint is precisely like Jacobson and says, thus, under the city's municipal code, upon being appointed by the mayor, subject to approval by the city council, these are the key words, the executive director of compliance and the city enter into a contract of employment for a four-year term where the executive director of compliance can only be removed from the office by the city through the procedure set forth in the municipal code. So we did allege a separate contract. Thank you. Thank you. Thank both sides for your excellent presentations. The briefs give us a lot to think about. This is an interesting, unique case, and we appreciate your presentations, both written or take place under advisement. And we are recessed. Thank you.